**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In the Matter of:                                :
                                                 :          Case No. 17-13193 (MEW)
**PACIFIC DRILLING S.A.,** *et al.,*              :
                                                 :          **Jointly Administered**
                          Reorganized Debtors.   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## BENCH DECISION REGARDING OBJECTION TO PROOF OF
## CLAIM NO. 200 FILED BY SAMSUNG HEAVY INDUSTRIES CO., LTD.

A P P E A R A N C E S :

TOGUT, SEGAL & SEGAL LLP
New York, NY 10119
*Attorneys for Debtors*
  By:  Kyle J. Ortiz
       Albert Togut
       Frank A. Oswald
       Patrick Marecki
       Amanda C. Glaubach

DLA PIPER LLP (US)
New York, NY 10020 and San Francisco, CA 94105
*Attorneys for Samsung Heavy Industries Co. Ltd.*
  By:  R. Craig Martin
       Joshua D. Morse

**HONORABLE MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

    This is the final version of a bench decision that I announced during a telephonic hearing

on March 26, 2020.

    The proceeding before me today has arisen in the Chapter 11 cases of Pacific Drilling

S.A. and certain of its affiliates, which are being jointly administered under case number 17-

13193.  The parties have referred to Pacific Drilling S.A. as "PDSA" in their papers, but since

that name is similar to the name of another entity I will instead refer to it as "Pacific Drilling" in

this decision.

Before the Court is the objection by the reorganized Pacific Drilling and certain other affiliated debtors to Proof of Claim Number 200, which was filed on December 20, 2018 on behalf of Samsung Heavy Industries Co., Ltd.  I will refer to Samsung Heavy Industries Co., Ltd. as "Samsung" in this decision.

The objecting parties contend that Claim Number 200 is barred because it was filed long after the deadline that I set for the filing of such claims.  I will refer to that deadline as the "bar date."  Samsung argues that the late filing should be permitted on grounds of excusable neglect. Samsung also contends that other claims that it filed prior to the bar date effectively asserted claims against all of the debtors in these cases; Samsung refers to these as "informal" claims against Pacific Drilling.  Samsung therefore argues, in effect, that Claim 200 should just be treated as an amendment or a clarification of a timely informal claim that was previously filed.

I have carefully reviewed the parties' submissions.  I have also carefully reviewed the relevant papers that were filed in these cases in order to confirm, or in some cases to refresh, my recollections about prior events.  I believe that much of what Samsung has contended in connection with the matters presently before me is at odds with what the record reflects.  It is therefore important to make a detailed review of the chronology before discussing the merits of the objection to claim number 200.

The chronology is as follows.

Samsung commenced an arbitration against Pacific Drilling VIII Limited on November 18, 2015.  The arbitration arose out of the purported rescission of a contract to construct a drillship that was to be known as the Pacific Zonda.  The rescission was based on an alleged failure by Samsung to make a timely delivery of the drillship.  I will refer to the arbitration as the "Zonda Arbitration".

2

Pacific Drilling VIII Limited was the entity that entered into a contract with Samsung for the construction of the drillship. For convenience, I will refer to that entity as "PDVIII". Pacific Drilling Services, Inc. guaranteed the obligations of PDVIII. I will refer to Pacific Drilling Services, Inc. as "PDSI." For reasons that will become clear as I review the chronology, I will also from time to time refer to PDVIII and PDSI collectively as the "Zonda Debtors," and I will refer to Pacific Drilling and the other affiliated debtors in these cases (other than the Zonda Debtors) as the "Non-Zonda Debtors."

It is not clear from the materials before me whether PDSI was named as a respondent from the inception of the Zonda Arbitration, but it is clear from the papers that at least at some point it became a respondent. In any event, it is admitted and undisputed that PDVIII and PDSI were the only entities named as respondents in the Zonda Arbitration.

Each side sought a large damage award in the Zonda Arbitration. The arbitration had not been concluded when the bankruptcy cases of Pacific Drilling and its affiliates were filed in 2017. On November 15, 2017, with the agreement of the parties, I entered an order that permitted the Zonda Arbitration to proceed. The evidentiary hearing in the Zonda Arbitration was later completed on March 2, 2018. Closing submissions were made in April 2018, and replies were filed in mid-May 2018.

In the meantime, I issued a bar date order applicable to all of the relevant cases on March 12, 2018. That order can be found on the docket at ECF Number 253. The bar date order established a deadline of May 1, 2018 for the filing of proofs of claim. I issued the order pursuant to Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure, which states that the Court "shall" set a deadline for the filing of claims in chapter 11 cases. Subparagraph (c)(2) of this rule further provides that any creditor who fails to file a claim before the deadline set by the

Court "shall not be treated as a creditor with respect to such claim for the purposes of voting and

distribution." Fed. R. Bankr. P. 3003.

Paragraph 7(d) of the March 12, 2018 bar date order stated that if

. . . the holder [of a claim] asserts a claim against more than one Debtor or has
multiple claims against different Debtors, a separate proof of claim form must be
filed with respect to each Debtor.  In addition, any entity filing a proof of claim
must identify on its proof of claim form the specific Debtor against which its
claim is asserted.

I also approved a form of notice, which was attached as an exhibit to the bar date order.  On Page

4, that notice referenced the need to file separate claims as to each Debtor against which a

claimant wished to make a claim.

Note that by the time the bar date occurred on May 1, 2018 the evidentiary hearing in the

Zonda Arbitration had been completed and the parties had filed their initial closing statements.

Samsung's counsel acknowledged during oral argument on March 25, 2020 that he and his client

knew about the bar date, knew about the terms of the bar date order, and received the official

notice thereof.

There is no contention in any of the papers before me that Samsung was unaware of the

requirement to file separate proofs of claim for each separate Debtor against which it wished to

make a claim.  The official claim forms that were prepared for these cases also emphasized the

need to file separate claims as to each separate Debtor.  Each claim form listed all of the Debtors

at the top of the first page, with checkboxes to enable creditors to identify the particular Debtor

against which a particular claim was being asserted.  The official proof of claim forms also

included an instruction, repeating what I had said in the bar date order, to the effect that only one

Debtor could be named in each separate claim form.

It was therefore clear that separate claim forms were needed if a creditor sought to make

claims against more than one Debtor.  This is a frequent feature of bar date orders, and similar

4

requirements have been enforced and approved by the Second Circuit Court of Appeals in prior cases. *See In Re Enron Corp.*, 419 F.3d 115, 119, 127 (2d Cir. 2005).

In fact, Samsung did file more than one proof of claim in these cases. The official records of the claims agent identify five proofs of claim as having been filed by Samsung on or before the bar date. Those are claims numbered 164, 168, 169, 170 and 176. Two of those claims were filed against PDVIII (claims 169 and 176); they appear to be duplicates of each other. Three claims were filed against PDSI (claims 164, 168 and 170); they, too, appear to be duplicates of each other. Anyone who has practiced in bankruptcy cases knows very well that claims agents often receive multiple copies of claims and then, as a precaution, often designate them as separate claims, which results in the official docketing of large numbers of duplicates. Putting the duplicates aside, however, it is undisputed that Samsung actually filed separate claims, as required by the bar date order, only against PDVIII and PDSI, and did not file any proofs of claim asserting a claim against any other Debtor or any of the Non-Zonda Debtors.

The proofs of claim that Samsung filed all had the same attachments. Paragraph 1 of each attachment stated that PDVIII had contracted for the construction and delivery of the new drillship, and that PDSI had guaranteed the obligations of PDVIII. Each attachment further stated, in paragraph 5, that "[i]n connection with the pending Zonda Arbitration, Samsung asserts a contingent claim against the debtors in the above captioned cases ("the Debtors") in the aggregate amount of $387,442,227.00" I will discuss this statement more after I finish with the chronology, but for now I will note that this statement referred specifically to the claims asserted in the Zonda Arbitration itself, and that the only Debtors who were parties to that arbitration were PDVIII and PDSI.

No plan of reorganization had been filed as of the bar date. The first filing of a proposed plan of reorganization occurred on July 31, 2018. It can be found at ECF Number 450. A proposed disclosure statement was filed that same day at ECF Number 451. On July 31, 2018, when those documents were filed, the Zonda Arbitration remained undecided.

The initial proposed plan of reorganization referred to Samsung's timely proofs of claim as the "Zonda Claims." The Zonda Claims were classified as Class 7E claims. The proposed plan would have applied to all of the Debtors, including the Zonda Debtors and the Non-Zonda Debtors, and the proposed plan stated that all unsecured claims, including Class 7E claims, would be paid in full. The proposed disclosure statement that accompanied the plan also referred to the claims that Samsung had filed. It stated that Samsung had filed claims "against PDVIII and PDSI" for approximately $387.44 million.

A First Amended Plan and Amended Disclosure Statement were filed on August 31, 2018 at ECF Numbers 551 and 552. They made no changes that are material to the matters before me today, but I note that the amended disclosure statement continued to state that Samsung's claims had been filed against PDVIII and PDSI. *See* Amended Disclosure Statement (ECF No. 552) at p. 38.

A few weeks later, on September 14, 2018, the Debtors filed a proposed Second Amended Plan of Reorganization that significantly altered their approach to the Zonda Debtors and to the Samsung claims. *See* ECF No. 590. The Second Amended Plan dropped PDVIII and PDSI from the list of Debtors who were to be subject to the proposed plan. The definition of "Debtor" made clear that the two Zonda Debtors would be subject to a separate Chapter 11 plan. *Id.* at 6. Accordingly, all references to Samsung, and to the Zonda Claims generally, were dropped from the proposed plan.

6

The Second Amended Disclosure Statement (ECF No. 591) referred to the proofs of

claim that had been filed against PDVIII and PDSI and stated that "[t]he Chapter 11 debtors

against which SHI has asserted claims, PDVIII and PDSI (the 'Zonda Plan Debtors') are not

Debtors under the Plan, and thus are not part of Class 7 (General Unsecured Claims) or any other

Class under the Plan.  The Zonda Plan Debtors intend to file a separate Chapter 11 plan (the

'Zonda Plan')."  *Id.* at 37.  The Second Amended Disclosure Statement further noted that if the

Zonda Debtors were unsuccessful in the Zonda Arbitration, they would liquidate what few assets

they had, and also noted that "[t]he proposed treatment of claims against the Zonda Plan Debtors

in the event of an unsuccessful Zonda Arbitration will be set forth in the Zonda Plan."  *Id*. at 38.

I held a hearing to consider the proposed Second Amended Disclosure Statement on

September 18, 2018.  The transcript can be found at ECF No. 622.  The transcript reflects the

fact that Samsung's counsel, the DLA Piper firm, was present and entered an appearance at this

hearing.  I noted during the hearing that PDVIII and PDSI had been removed as debtors who

would be subject to the plan.  *See* Hr'g Tr., 11:13.  Mr. Ortiz, on behalf of the Debtors, explained

that

> [i]n the event that the Zonda Arbitration does go against PDVIII, other than PDSI,
> no other Debtor entity and none of the Debtors that are still in this plan are a
> guarantor or otherwise potentially liable on that claim.  Thus, the Debtors will file
> a separate plan to address those two entities, which is basically just to set aside
> and wait for that decision from the arbitration, because it's really pretty binary.
> It's either going to be a lot of cash into the estate or it's going to be a claim where
> that claim is isolated to those two entities.

*Id*. at 12:4.  Samsung's counsel noted at the same hearing that the revised plan had "carved out

two debtors against two of my client, Samsung Heavy Industries have claims."  I think that is

supposed to be "against whom my client" has claims, but the transcript reads "against two of my

client."  *Id.* at 111:24 – 112:2.  He noted that there might be avoidance actions or other rights

belonging to those two carved out estates "that are now more meaningful to me than before when

7

I was in Class 7E and told in the old disclosure statement that I was going to be getting paid in full if I had a claim." He therefore asked that such avoidance action claims not be pledged to others. *Id*. at 112:2-10.

At the hearing, Samsung's counsel did not dispute the contention that Samsung had filed no claim against the Non-Zonda Debtors. Instead, he acknowledged it when he acknowledged that the two Debtors against which his client had made claims were being removed from the proposed plan, and when he acknowledged that the effect of this removal would be that Samsung would no longer be a general unsecured creditor under the main Debtors' plan, and would no longer be entitled to payment under that plan.

Samsung's counsel later sent a letter dated September 24, 2018 to the Debtors' counsel. A copy of the letter was submitted to the Court as Exhibit P to the declaration of R. Craig Martin, filed on March 20, 2020 (ECF No. 940). Footnote 3 of the September 24, 2018 letter stated the following: "SHI filed proofs of claim against PDVIII and PDSI, which have been identified as Claim Nos. 164, 168, 169, 170 and 176 on the official register of claims in these cases, in which SHI asserted claims in the aggregate amount of approximately $327 million." At no point in the letter did Samsung's counsel allege that Samsung had actually filed any proofs of claim against other entities. Samsung's counsel argued in the letter, however, that the Debtors acted as a single integrated enterprise, and he urged the Debtors' counsel to abandon the separate plans and instead to return to a single plan for all of the Debtors under which all unsecured creditors would be paid in full. Samsung's counsel also asked for various other things, including: (1) that the Zonda Plan Debtors' cases be converted to Chapter 7, or that a Chapter 11 trustee be appointed; (2) that Samsung be given the right to file objections on behalf of the

Zonda Debtors to the separate plan of reorganization filed by other Debtors; and (3) that the

Zonda Debtors investigate transfers that may have been made to other Debtors.

The Non-Zonda Debtors filed a Third Amended Plan and a Third Amended Disclosure

Statement on September 25, 2018.  Those documents can be found at ECF Nos. 608 and 610.

The Third Amended Disclosure Statement disclosed that the Debtors' counsel had received the

September 24, 2018 letter from Samsung's counsel, and that the Non-Zonda Debtors denied any

responsibility for the Zonda Claims.  *See* Third Amended Disclosure Statement at 38.

I held a continuation of the disclosure statement hearing on September 25, 2018.  The

transcript of that hearing can be found at ECF number 634.  Samsung's counsel stated at that

time that Samsung was reserving its rights with respect to the proposed plan of the Non-Zonda

Debtors, but without providing further details.  *Id*. at 36.

A Third Modified Plan and Modified Third Disclosure Statement were filed on

September 27, 2018 (ECF 620 and 621), but they made no changes that are material to the

present matter.  A Fourth Amended Plan was filed on October 29, 2018 (ECF No. 713).  It still

made no reference to Zonda or to Samsung.  It still made clear that PDVIII and PDSI would

submit their own separate plan and were not part of the plan for which confirmation was being

sought on behalf of the Non-Zonda Debtors.

Samsung did not object to the confirmation of the Non-Zonda Debtors' plan.  A

confirmation hearing was held on October 31, 2018; the transcript is at ECF No. 803.  Mr. Ortiz

noted again at that hearing that the Zonda Debtors would file a separate plan under which, if

Samsung prevailed, those two Debtors would be liquidated.  *Id.* at 38:10.

After the confirmation hearing I entered findings of fact and a confirmation order that

appear on the docket at ECF No. 746.  Paragraph 112 made clear that nothing in the plan or in

the confirmation order waived, settled or compromised any claims against the Non-Zonda

Debtors that were owned by the Zonda Debtors or by creditors of the Zonda Debtors, and that

claims and causes of action were reserved "subject to the Bar Date Order and any argument

regarding the applicability thereof." *Id.* ¶ 112.

At this point Samsung still had filed no claim against Pacific Drilling or any of the other

Non-Zonda Debtors.  It was entirely clear to me, and I believe to all of the parties involved

(including Samsung), that the whole premise of the separate plan confirmation for the Non-

Zonda Debtors in October 2018 was that the Samsung claims would be isolated to the Zonda

Debtors.

After confirmation the parties proceeded to close a number of new financings and equity

purchases representing infusions of hundreds of millions of dollars of capital into the Non-Zonda

Debtors.  It was only after those financings had closed, and only after the other parties were

locked into the terms of the confirmed plan of reorganization for the Non-Zonda Debtors, that

Samsung filed a proof of claim against Pacific Drilling in December 2018.

The new Samsung claim was filed as Claim number 200.  It was filed using the official

proof of claim form, and the box was checked showing that the claim was filed against Pacific

Drilling.  The claim is marked as having been received by the official claims agent on December

20, 2018.  Item four on the claim form asked whether the claim amended another claim that had

previously been filed.  Samsung checked the "no" box.  The claim also included an attachment

that explained the bases for the claim.  Paragraph 5 of the attachment asserted that Samsung had

a contingent claim against Pacific Drilling for $387,442,227.  It then stated that "Samsung filed

proofs of claim previously against the Zonda Debtors, asserting contingent claims for the amount

listed immediately above."  A footnote listed and made reference to claims 169 and 170.

I will discuss the merits in a moment, but I want to pause to note that, in contrast to what Samsung has argued in its papers and at the hearing on March 25, Samsung's December 2018 proof of claim did not take the position that its prior claims had been filed against all of the Debtors, and it did not take the position that claim 200 was merely an amendment or a clarification as to those prior claims. Rather, the plain wording of Samsung's own claim said the exact opposite. Samsung acknowledged that its prior claims were only against the two Zonda Debtors, and it also acknowledged that this new claim was not an amendment to those prior claims.

Furthermore, Samsung noted at paragraph 7 of the attachment to claim 200 that Samsung expected the Non-Zonda Debtors to object to the timeliness of the claim. Samsung did not argue in that paragraph that in fact the claim had previously been filed, either on a formal or an informal basis. Instead, Samsung argued that it should be allowed to file a late claim and should be excused from the normal consequences of missing the bar date on grounds of "excusable neglect." *See* the attachment to proof of claim number 200 ¶ 8. The purported grounds for the excusable neglect claim were that the plan of reorganization had been changed on the eve of confirmation to carve out the Zonda Debtors, which meant that Samsung's potential recovery would be limited to those debtors and thereby jeopardized. *Id.* ¶ 9.

I will now turn to the merits of the objection that is before me. I will start with a procedural comment. At least part of Samsung's argument is that I should excuse Samsung from the requirements of the bar date on grounds of "excusable neglect." Procedurally, Samsung has not raised this issue in the proper way. If a party wishes to file a late claim it is incumbent on the party to seek the Court's permission to do so by filing a motion under Rule 9006 of the Federal

Rules of Bankruptcy Procedure.  Samsung never did so.  Instead it just filed a belated claim and argued in the claim itself that the late filing should be excused on grounds of excusable neglect.

While the procedure was wrong, I will nevertheless consider the excusable neglect argument on its merits and I will consider Samsung's other contentions on their merits.

As to the excusable neglect contention: Rule 9006 of the Federal Rules of Bankruptcy Procedure states that if an order of the court requires an action to be taken on or before a particular date, and if the action is not taken by the specified deadline, the court nevertheless may extend the deadline after the fact, and may permit the act to be done belatedly, "where the failure to act was the result of excusable neglect."  *See* Fed. R. Bankr. P. 9006(b)(1).

The leading decision on the application of the "excusable neglect" standard is the decision of the United States Supreme Court in *Pioneer Inv. Servs. v. Brunswick Assocs, Ltd. P'ship*, 507 U.S. 380 (1993).  In *Pioneer*, an attorney filed a claim 20 days after the bar date.  He claimed that he had been experiencing "a major and significant disruption" in his life due to his withdrawal from his former law firm and that he was unaware of the bar date until after the date had passed.  The Supreme Court held that the wording of the rule shows that relief may be available even if a deadline is missed due to neglect.  It also held that neglect includes instances in which deadlines are missed due to carelessness or inattentiveness.  In the words of the Supreme Court, the term "neglect" encompasses "both simple, faultless omissions to act and, more commonly, omissions caused by carelessness."  *Id*. at 388.  The Supreme Court also held that the determination of whether neglect is excusable is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  *Id*. at 395.  The relevant factors include: (1) the danger of prejudice; (2) the length of the delay and its potential impact on proceedings; (3) the reason for the delay, including whether it was in the reasonable

control of the movant; and (4) whether the movant acted in good faith. *Id.* However, the

Supreme Court rejected the Sixth Circuit's holding that a party should not be held responsible for

the excusable neglect of its counsel. *Id.* at 396.

Applying these principles, the Supreme Court held in *Pioneer* that excusable neglect had

been demonstrated. *Id*. at 397-99. The Supreme Court gave "little weight" to the fact that

counsel was allegedly experiencing upheaval in his law practice. *Id*. at 398. However, since the

bar date notice had been set forth in a notice of a creditor meeting, without any indication in the

title of the notice that it also included information about a bar date, the Supreme Court held that

counsel's admitted lack of actual knowledge of the bar date, coupled with a lack of prejudice and

a demonstration of good faith, constituted excusable neglect. *Id*. at 398-99.

The Second Circuit has taken "a hard line" in applying the *Pioneer* factors. *See Silivanch

v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003). In *Silivanch*, the Second Circuit

applied the *Pioneer* factors in determining whether an untimely filing of an appeal was due to

excusable neglect. The Court held that the third of the *Pioneer* factors (the reason for a delay

and whether it was in the reasonable control of the movant) is to be given the most weight in

determining whether excusable neglect has been shown. *Id.* at 366. It further instructed that if a

deadline is clear and understood, but is missed anyway, "we continue to expect that a party

claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Id*. at 366-

67.

In a later decision, the Second Circuit emphasized again that "it is the third factor – the

reason for delay – that predominates, and the other three are significant only in close cases."

*Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 415-16 (2d Cir. 2004). The *Silivanch* decision

was reaffirmed in *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron*

*Corp.*), 419 F.3d 115, 122-24 (2d Cir. 2005), where the court rejected a request for relief from a bar date based on allegations of "excusable neglect."

Consistent with these authorities I will first consider the reason for the alleged delay by Samsung.

Samsung contends the delayed filing constituted excusable neglect because the proposed plan was changed at the last minute in September 2018 and the change caught Samsung unawares. However, the relevant question is whether there was excusable neglect for Samsung's failure to file by the bar date on May 1, 2018. No plan had even been proposed at the time of the bar date, so later plan terms and changes in plan terms could not possibly have anything to do with Samsung's failure to assert claims by the bar date against anyone other than the Zonda Debtors.

Samsung's counsel argued at the hearing on March 25 that the arbitration claims had not yet been decided when the Bar Date arrived and therefore that it was not known whether Samsung would have excess claims against the Non-Zonda Debtors. But the definition of "claims" under section 101 of the Bankruptcy Code includes claims that are contingent, unliquidated, unmatured or disputed, and my bar date order plainly applied to all such claims. I note that the explanation offered by Samsung's counsel would have similarly suggested that there was not yet reason to file claims against PDSI as the guarantor of the obligations of PDVIII, but that hardly stopped Samsung from doing so in May 2018. If Samsung really thought that it had a contingent claim against other debtors then Samsung should have filed a claim against those debtors, and that is true regardless of whether the claim was contingent on the outcome of the Zonda Arbitration, or whether it was contingent, unliquidated, unmatured or disputed in any other way.

14

Samsung has also argued, based on various alleged prior statements and conduct by Pacific Drilling both before the bankruptcy cases and in alleged meetings of creditors, that Samsung allegedly believed at the time of the bar date that all of the Pacific Drilling entities would stand behind the payment of a potential Samsung claim.  But if any of that were true, it hardly excused Samsung's failure to file claims against Pacific Drilling and other Non-Zonda Debtors.  To the contrary: if Samsung believed for any reason that any of the Non-Zonda Debtors were going to be obligated to stand behind the payment of any Samsung claim, that is just an explanation of why Samsung could and should have filed claims against those entities on or before the bar date.  It is not an excuse for Samsung's failure to do so.

As I said a moment ago, the bar date order applies to claims of any and all kinds.  By its terms it explicitly covered claims even if they were contingent, unmatured, unliquidated or disputed.  The whole point of that broad definition is to allow the relevant debtors to identify all claims against them so that they know what they need to address in a plan of reorganization.  *See In re Manhattan Jeep Chrysler Dodge, Inc.*, 18-10657-MEW, 2019 WL 1054928, at *2 (Bankr. S.D.N.Y. March 4, 2019) (noting that the definition of claim encompasses all claims, whether contingent or disputed or otherwise, and that "[a] company cannot reorganize, and cannot structure potential distributions to its claimants, without having an ability to identify the universe of those potential claimants.  That is the purpose that a bar date order serves.")  In that context, any and all of the matters to which Samsung has cited in its papers or that Samsung referenced during the hearing yesterday that occurred on or prior to May 1, 2018 are just reasons why Samsung should have filed claims before the bar date, and are not good excuses for its failure to do so.

Samsung also alleges in its papers that Pacific Drilling allegedly acted as the contracting party and allegedly gave reassurances to Samsung that it would cover Samsung's claim, but again that does not show excusable neglect. To the extent any of those alleged reassurances happened prior to the bar date (as appears to be the case as to most of the matters to which Samsung has cited), those are just good reasons, once again, why Samsung ought to have filed a claim against Pacific Drilling, which Samsung did not do. If on the other hand, alleged reassurances were given after the bar date and then subsequently revoked, then they obviously had nothing to do with Samsung's prior decision, at the time of the bar date, to file claims only against the Zonda Debtors and not against others.

The third *Pioneer* factor also calls upon me to consider whether the delay was based on something that was within the reasonable control of Samsung. This is not like the *Pioneer* case, where it was undisputed that an attorney did not actually know about a bar date and where the court excused that lack of knowledge because notice of the bar date had not been prominently given. In this case, experienced bankruptcy counsel knew of the bar date and knew of the requirements of the bar date order. If Samsung did not file claims against the Non-Zonda Debtors, it was because Samsung elected not to do so at that time. Samsung may regret its decision, but the failure to file the claim was entirely in Samsung's control and is entirely the result of Samsung's own decisions.

Samsung may want to change its mind now, but that does not mean that its prior decisions were the result of excusable neglect, or even that they were the result of "neglect" at all. I must emphasize again that there is no allegation here that Samsung did not know of the bar date and the requirements of my bar date order. There is similarly no allegation that Samsung did not understand that the bar date applied to claims that Samsung might want to pursue against

16

the Non-Zonda Debtors.  What Samsung's counsel argued yesterday was that I should find that it

was nevertheless reasonable for Samsung to wait before filing a claim.  But the gist of that

argument is not that I should excuse Samsung for a careless oversight, but that I instead should

excuse Samsung from the consequence of a deliberate and knowing decision.  That is not a basis

for relief under Rule 9006.  A decision not to file a claim, even if that decision turns out to be

unwise, is not "neglect" of a kind that Rule 9006 excuses.  *See United States v. Darling*, 706 F.

App'x 34, 36 (2d Cir. 2017) (holding that the fact that a party has changed its mind is neither

good cause to reopen a deadline nor excusable neglect for having missed one).

The second *Pioneer* factor calls upon me to consider the length of a party's delay and its

impact on proceedings.  Many cases have noted, in applying *Pioneer*, that a party who misses a

deadline must act with reasonable promptness after its neglect becomes clear to it, and must act

promptly to take the action that should have been taken earlier.  *See, e.g.*, *In re AMR Corp.*, 492

B.R. 660, 667 (Bankr. S.D.N.Y. 2013) (holding that a three-month delay was an unreasonable

delay in applying the *Pioneer* factors).  Here, my original bar date order gave creditors about

seven weeks to file claims.  Samsung knew in early September 2018 that the Zonda Debtors

were being separated from other debtors, and that Samsung's claims would only result in

recoveries from the Zonda Debtors.  However, Samsung filed no proof of claim against any of

the Non-Zonda Debtors at that time.  It was not until 15 weeks later – *after* the secured creditors

had committed hundreds of millions of dollars of new financing to the Non-Zonda Debtor plan,

*after* I entered an order confirming that plan, and *after* that plan became effective – that Samsung

filed its new claim, seeking full payment by the Non-Zonda Debtors of more than $300 million.

That is not acting with reasonable promptness; it is exactly the opposite of reasonable

promptness.

I am also directed under the second *Pioneer* factor to consider the effect of a party's delay on the proceedings before me. To some extent this overlaps with the first *Pioneer* factor in this particular case, which requires me to consider the prejudicial impact on other parties.

As I explained above, the whole purpose of having a bar date in a Chapter 11 case is to identify the universe of claims that must be addressed in a Chapter 11 plan. In this case, the Non-Zonda Debtors had several classes of secured creditors. It was quite evident that the values of the companies were not sufficient to cover the amounts of all of the secured claims. Unsecured creditors (including, if its claim were allowed, Samsung) were junior to the secured creditors, and technically they had no right to be paid at all if the secured creditors pursued their rights as senior creditors to receive whatever value was available. The secured creditors, in the case of the Non-Zonda Debtors, nevertheless agreed in the confirmed plan to allow unsecured claims against those Debtors to be paid in full. That was explained to me early in these cases as a gesture of good will and a desire to maintain good relations with trade creditors and employees. But the actual reason does not matter. The unsecured claims that had been filed against the Non-Zonda Debtors were relatively small at the time the plan was confirmed.

If Samsung wanted to assert a potential eye-popping claim against the Non-Zonda Debtors, then as a matter of equity and fairness it should have done so at an earlier time. If it had done so in September, after the Zonda Debtors had been separated from the other debtors, then the parties could have litigated at that earlier time the question of whether the late claim should be permitted. If the late claim had been permitted at that time, the Non-Zonda Debtors would have been able to decide whether they still wished to agree to pay unsecured creditors in full. More importantly, the senior secured creditors could have decided whether they wished to

18

support a plan under which potentially hundreds of millions of dollars of their investments and recoveries might be diverted to a creditor who legally was junior to them.

The fact that Samsung waited until after these transactions were in place and until after the plan was confirmed was improper, inequitable and prejudicial. The senior secured creditors committed hundreds of millions of dollars of financing under the plan. Samsung's belated claim would completely alter the landscape. It would effectively divert the value that the secured creditors contributed, potentially devoting that value to Samsung itself rather than to the conduct of the business of which the secured creditors took ownership. The effect would be that the secured creditors would have contributed vast sums of their own money for the benefit of a creditor who was junior to them.

Samsung argued at the hearing on March 25 that it should be entitled to take discovery and to try to prove that somehow the secured creditors would have done the same thing anyway, and that the terms of the Non-Zonda Debtors' plan would have been the same, even if Samsung had filed its claim earlier. But I see no reason for such discovery. The relevant point is that in fairness to the other parties, the question of whether Samsung would be able to pursue a claim could and should have been decided earlier. Samsung did not act reasonably, promptly or equitably in delaying the filing of its claim. Instead, it tried to game the timing of its claim, filing it only after the other parties were committed to the confirmed plan and only after it was too late for them to change the provisions of that plan insofar as they related to payments of unsecured claims.

In this regard, the delay had a huge impact on the proceedings. An entire plan was confirmed and hundreds of millions of dollars were committed to new financing arrangements. Trying to sneak in a $337 million claim after all this was done is just not right. It is prejudicial.

19

The secured creditors and other parties were entitled to make informed decisions about the treatment of junior creditors at the time of plan confirmation. Samsung's delay in filing the claim was just an effort to take away that opportunity and to wait until other parties were "locked in" to the payment of unsecured claims, even though it had to be obvious to everyone that the payment of unsecured claims would have an entirely different impact on the secured creditors if Samsung's own claims potentially were included. In that regard, Samsung's delay was inequitable, manipulative and inexcusable.

I am also directed under *Pioneer* to consider whether Samsung has acted in good faith. I certainly believe that Samsung has not acted equitably, for the reasons that I have just explained, but I do not need to go so far as to decide as a factual matter whether its conduct also amounted to a lack of subjective good faith. My decision would be the same even if I were to find that Samsung acted with good faith.

I have discretion to balance the *Pioneer* factors, so long as I give primary weight to the third factor in accordance with the Second Circuit authorities. In my judgment the lack of a good reason for delay, the fact that what happened was entirely under Samsung's control, the absence of a proper identification of actual "neglect" that should be excused (as opposed to a request to be excused from the consequences of a conscious decision), the fact that Samsung did not proceed with reasonable promptness when it learned of the nature of its alleged mistake in September, the fact that the claim was delayed until after confirmation of the plan of reorganization and after other parties had committed huge resources, and the fact that Samsung's unexcused delay deprived other parties of opportunities to make their own informed choices as to how to treat a potential Samsung claim, all show that Samsung did not act with "excusable neglect" under the circumstances.

I note again that under the applicable case law, Samsung's failure to identify a good and sufficient excuse for its conduct would itself be grounds for the denial of relief under Rule 9006, even if all of the other factors weighed in Samsung's favor.  *See Williams*, 391 F.3d at 417 (holding that even if the other factors favored relief, a failure to satisfy the third *Pioneer* factor justified the denial of a motion for relief from the consequences of a missed deadline based on alleged "excusable neglect").  That is all the more reason why the request for relief should be denied in this particular case, where Samsung has failed to pass any of the *Pioneer* tests (with the possible exception of good faith, which I have found it unnecessary to consider).  Under these particular circumstances the objection should be sustained.

Samsung has also argued that the claims that it filed against PDVIII and PDSI actually were claims against all of the Debtors.  This allegation is based on the statement in the attachment that I cited above to the effect that Samsung was asserting a contingent claim against the "debtors."  As I noted above, the full sentence in the attachment actually stated that "[i]n connection with the pending Zonda Arbitration" Samsung had made claims against the "debtors in the above captioned cases."  The only debtors named in the arbitration were the Zonda Debtors, and the Debtors' cases that were identified in the proof of claim forms (to which these attachments were attached) were the Chapter 11 cases of PDVIII and PDSI.

Contrary to what Samsung now alleges, it was not making claims against all of the debtors.  In fact, even now Samsung is not seeking to do so.  It wants only to assert a belated claim against Pacific Drilling, not against all of the debtors.

Samsung's contention, more importantly, is belied by the plain terms of the documents and by Samsung's own prior statements.  As I have noted, the captions to the proofs of claim that Samsung actually filed referred only to the Zonda Debtors.  Samsung did in fact file separate

claims as to PDVIII and PDSI.  If Samsung had really thought that one claim was good enough to constitute a claim against all of the Debtors, then there would have been no reason for Samsung to file claims against both PDVIII and PDSI.  That plainly is not how Samsung itself regarded the situation.  It named the two Zonda Debtors as respondents in the arbitration, and it realized that it needed to file separate claims against each of those two Debtors in order to pursue claims against both of them.

As I noted above, Samsung did not object to the statements on the record by the Debtors' counsel to the effect that Samsung's claims had only been filed against PDVIII and PDSI.  Nor did Samsung object to similar statements that were made in the Disclosure Statements that the Debtors filed.  In addition, Samsung's counsel himself stated in the September 24, 2018 letter to the Debtors' counsel that Samsung had filed claims against PDVIII and PDSI.  There was no assertion that Samsung had filed claims against others.

Similarly, the December 2018 proof of claim did not allege that it was a clarification of prior claims or an amendment to prior claims.  Instead it said in part I-4 that it was not such an amendment.  The attachment even referred to the prior claims that had been filed and described those as claims that had been made against PDVIII and PDSI.  The attachment did not argue that the December 20 claim should be treated as an amendment or a clarification of a prior formal or informal claim.  Instead it argued solely that the new claim should be permitted based solely on excusable neglect.

As to Pacific Drilling, this is an entirely new claim, not an amendment or a clarification of an existing claim.  *See In re PT-1 Communications, Inc.*, 292 B.R. 482, 487 (Bankr. E.D.N.Y. 2003).

Samsung has also suggested that the reservation of rights paragraph in the confirmation order allegedly permits the late claim to be filed.  The relevant provision merely said that the plan and the confirmation order themselves were not prejudicial to claims that various entities might have.  It said nothing about the fact that the bar date order might bar such claims.  In fact, it made clear that any claims remained subject to the bar date and to arguments about the application of the bar date.  At most, the reservation of rights reserved Samsung's right to ask for permission to file a late claim.  It did not mean that Samsung would automatically have permission to do so, and it did not insulate Samsung from contentions that its claims were barred by the bar date order.

For the foregoing reasons, I will sustain the objection to proof of claim number 200 and I will expunge that claim.

Dated:  New York, New York
        April 2, 2020


                                        **s/Michael E. Wiles**
                                        Honorable Michael E. Wiles
                                        United States Bankruptcy Judge